FILED
2011 Aug-31  AM 11:45
U.S. DISTRICT COURT
N.D. OF ALABAMA



**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ALABAMA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| John Mason IV; | ) | |
| Ishmael Gregory,     and | ) | CV-11-TMP-3155-W |
| others similarly situated | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MIKE HALE, IN HIS | ) | |
| INDIVIDUAL AND OFFICIAL | ) | |
| CAPACITY AS SHERIFF OF | ) | |
| JEFFERSON COUNTY, ALABAMA, | ) | |
| AND JEFFERSON COUNTY, | ) | |
| ALABAMA, THE | ) | |
| JEFFERSON COUNTY | ) | |
| COMMISSION, DAVID | ) | |
| CARRINGTON, GEORGE | ) | |
| BOWMAN, SANDRA LITTLE | ) | |
| BROWN, JIMMIE STEPHENS, | ) | |
| And JOE KNIGHT, in their | ) | |
| Official & individual Capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

This is a civil rights action brought by John Mason IV, Ishmael Gregory inmates, and others similarly situated at the Jefferson County Jail ("the Jail") due to the deliberate indifference of government officials responsible for their protection and care and a violation of the RLUIPA.

## PARTIES

1)    John Mason IV ("Mason"), Ishmael Gregory ("Gregory") and others similarly situated are current or future inmates residing in the Jefferson County Jail located in Birmingham, Alabama. They are the named Plaintiffs in this action.

2)    Mike Hale, who is sued both in his individual and official capacity as the Sheriff of Jefferson County, Alabama, is responsible for the general operation of the Jefferson County Jail. See e.g. Ala. Code §§ 11-14-21, 11-16-29, 14-6-1,14-6-4,14-6-8, 14-6-17, 14-6-19,14-6-21,14-6-40,14-6-94,14-6-95, 14-6-95,14-6-96 (1975). At all times relevant to the events described herein the actions and omissions of Sheriff Hale have been taken under the color of state law, and Sheriff Hale has acted as the final policy maker of Jefferson County for those aspects of jail operation under his control. Sheriff Hale is also constitutional mandated to maintain certain

constitutionally mandated standards of care at the jail as well developed by the relevant federal case law.

3)      The Jefferson County Commission and the individual commissioners are also parties to this action. They provide funds for the jails operation and also are the governing body of Jefferson County.

## JURISDICTION AND VENUE

4)      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiffs seek declaratory and injunctive relief under 28 U.S.C. §§ 1343, 42 U.S.C. § 1983 *et seq.*, the First, Eighth and Fourteenth Amendments to the United States Constitution, and the Religious Land Use and Institutionalized Person Act ("RLUIPA").

5)      This Court has venue under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the Plaintiffs claims occurred within the Northern District of Alabama. Moreover, according to local rules

this action arises within the Western Division of the Northern District since that is where much of Jefferson County is located.

## INTRODUCTION

6)     Jefferson County, Alabama is the county in which Birmingham and Bessemer, Alabama are located along with numerous other municipalities. Both Birmingham and Bessemer each contain a county jail. The Birmingham jail is designed for 600 inmates and currently houses 1700± inmates. The Birmingham jail is at over 300% capacity and the Bessemer jail is **_empty_**. The Bessemer jail has an alleged capacity in excess of 400.

7)     The purpose of a county jail is to process people into jail as they are arrested, hold those who are pretrial detainees who do not bond out, let inmates who are doing county time serve their sentences, and to hold state inmates until they can be transferred. The jail also holds child support detainees, and persons who have invoked the wrath of their probation officers.

8)     The Birmingham county jail is hopelessly overcrowded. While the same can be said for the state prison system, the county jail does not have

4

the liberty of releasing inmates to an outdoor area. There is nowhere for the inmates to go. A range of adverse effects occur when a facility is overcrowded.

9)      With few exceptions prison overcrowding has a number of serious negative consequences. The crowded conditions heighten the level of cognitive strain that persons experience by introducing social complexity, turnover and interpersonal instability into an already dangerous jail world in which interpersonal mistakes or errors in social judgment can be fatal.

10)     It is obvious to anyone that given "x" amount of resources and dividing "x" by an ever increasing number of "y" inmates is not a recipe for disaster but a guarantee of one. Further, the lessened staffing of the jail due to the loss of many staffers acerbates the situation.

*[handwritten: sp exacerbates]*

11)     The present conditions currently exist in the Birmingham County jail:

a)      The facility is at over 200% capacity with inmates 6-8 to a cell designed for two with three to four inmates sleeping on the concrete floor, often without mattresses.

b)      The jail is only serving two meals a day and these meals would shame any standard of decency;

c)      The sheriff has discontinued ***any*** visitors or clergy from coming into the jail to visit inmates. It is worthwhile to note that even SuperMax prisons do not enforce this policy. However, he is allowing counsel in (to date);

d)      There is no effective segregation of inmate population as to varying levels of offenses;

e)      The mental health of inmates is ignored;

f)      The physical health of inmates is at best abysmal;

g)      The threat of violence increases on a daily basis;

h)      the sheriff has been given numerous notices that these conditions are occurring;

g)      the sheriff has prevented any mail from reaching inmates

i)      the sheriff has effectively only allowed the practice of Christianity in the jail

12)     The Defendants will no doubt admit that the above conditions are true. Indeed, they have no choice. They however, will point to budgetary

6

constraints imposed by the failure of the Alabama Legislature to again fund Jefferson County's 1% income tax (known as the "occupational tax").

13)   The Plaintiffs aver that budget constraints are not an excuse for ignoring clear and well known constitutional mandates.

## CLASS AVERMENTS

14)   This action is properly maintained as a class action pursuant to Rule 23 of the F.R.C.P. in that the character of the rights sought to be enforced for the class are common.

15)   The Class consists of all inmates who have been, are or will be in the custody of any of the Defendants. *since June 13, 2011*

16)   The Class and Members of the Class are sufficiently numerous so that it is impracticable to bring all Plaintiffs before the Court. Obviously, if there are 1700 inmates in the county jail now; numerousity has been satisfied.

17)   The named Plaintiffs will fairly ensure the adequate representation for the interests of the members of the Class. The interests of the named Plaintiffs are not antagonistic to each other or to those of the Class members, as the named Plaintiffs and the Class members all seek declarative and injunctive relief to stop the same systemic patterns, customs and/or practices and legal violations alleged on their behalf. The interests of Plaintiffs and are not antagonistic to each other, as these named Plaintiffs.

18)   Each named Plaintiff is sufficiently familiar with the facts and circumstances surrounding the inmate's situation to fairly and adequately represent the inmates interests in this litigation.

19)   Plaintiffs and Class members are represented by attorneys employed by each named Plaintiff. They are represented by Alabama attorneys, who have extensive experience litigating the rights of inmates, including Alabama inmates. Plaintiffs' counsel have the resources, expertise, and experience to prosecute this action.

20)   The character of the Plaintiffs' rights sought to be enforced on behalf of themselves and the Class is common. The questions of law and fact raised by the claims of the named Plaintiffs are common and typical of those raised by the claims of the Class. Questions of law and fact common to Plaintiffs & the Class predominate over any individual issues of law or fact.

21)   All of the named Plaintiffs and Class members are in need of adequate jail conditions, must rely on the Defendants for those services, and are harmed by these Defendants' systemic failure to fulfill their legal obligations to provide and necessary adequate and legal jail services and conditions.

22)      The harms suffered by all of the named Plaintiffs are typical of the harms suffered by the Class members.

23)   Common questions of fact include, but are not limited to:

a)      whether, contrary to law and reasonable professional standards Defendants fail to provide Plaintiffs and Class members with safe, stable, and appropriate jail services; said services being necessary to prevent them from deteriorative physically, psychologically or emotionally

while in government custody; and timely and appropriate services necessary to ensure that they are either safely reunited with their families or promptly placed in state custody;

b)      whether contrary to law and reasonable professional standards the Defendants are in violation of the RLIUPA

24)    Common questions of law include, but are not limited to:

a)      whether the actions and inactions of the Defendants violate the rights of the Plaintiffs and Class members under the Due Process Clause of the Alabama State Constitution; the First,   Eighth and Fourteenth Amendments to the United State Constitution; the RLUIPA, 42 U.S.C. § 1983, *et seq.*, and regulations promulgated thereunder; and the Americans with Disabilities Act (the "ADA") and §504 of the Rehabilitation Act and;

b.      Whether the actions of the Defendants are deliberately indifferent to the needs of the Plaintiffs and the class that they represent

25)    It is constitutionally required that jails be maintained to a known standard of care. The constitution mandates that both prisoners and pretrial detainees not be subjected to cruel and unusual punishment.

26)    The Eighth Amendment affords convicted prisoners protection from cruel and unusual punishment.

27)    This protection has been extended to pretrial detainees of various types via the Due Process Clause of the Fourteenth Amendment.

28)    As defined by the Supreme Court, this constitutional protection from cruel and unusual punishment requires correctional officials to provide "humane conditions" of confinement to jail inmates.

29)    When a jurisdiction takes a person into custody and holds him against his will, the constitution imposes a corresponding duty to assume some responsibility for his safety and general well-being.

30)    The duties imposed and rights conferred by the Eighth Amendment apply to the unreasonable risk of serious harm, even if such harm has not occurred.

31)    It is deliberate indifference for a correctional official to allow serious medical or mental health needs to go unmet.

32)    It is deliberate indifference for inmates to not be reasonably protected from harm or not fed or overcrowded.

33)    The Eight Amendment guarantees that prisoners will not be deprived of the minimal civilized measures of life's necessities. Accordingly, correctional officials are required to provide reasonable adequate ventilation, sanitation, bedding, hygienic materials and utilities.

34)    Conditions will violate the Constitution when they pose an unreasonable risk of serious damage to an inmate's current or future health, and the risk is so grave that it offends contemporary standards of decency to expose anyone unwillingly to that risk.

## NAMED PLAINTIFFS

35)    John Mason Iv is currently in the Jefferson County Jail pending a hearing to obtain release. He has hepatitis "C" and is not being treated for it by the jail. He has also been in numerous fights due to the overcrowding.

36)    Ishmael Gregory is currently awaiting transfer to the State Department of corrections. He has a boil which has not been treated, despite numerous attempts to obtain medical assistance. He is in a crowed cell. His laundry is not done for weeks at a time.

## INTRODUCTION

## 42 U.S.C. §1983

37)    Plaintiffs incorporate all of the above paragraphs in this complaint as if fully set out herein.

38)    Plaintiffs aver that the named Plaintiffs suffer the enumerated harms which are in violation of 42 U.S.C. §1983, the first, Eighth and Fourteenth Amendments to the United States Constitution.

39)   The Plaintiffs aver that the overcrowding alone leads to the violation of all of the above enumerated constitutional mandated standards.

40)   It is the law in this nation that an institution which is at more than 137.5% capacity can be characterized as constitutionally insufficient.

41)   The overcrowding, the underfeeding, the lack of medical care, the non-segregation of inmates, the lack of mental health care, the dangerous conditions, and the lack of sufficient supervisory personnel will continue to exist until court action is taken.

WHEREFORE, PREMISES considered, Plaintiff prays for an ORDER which requires the sheriff of Jefferson County to end every one of his unconstitutional practices, and to award attorney's fees pursuant to 42 U.S.C. §1988.

## COUNT II

## RLUIPA

42)     The Jefferson County Sheriff's Office and Sheriff Mike Hale

prohibit receipt and possession of virtually all mail and other expressive

materials by persons incarcerated at the Berkeley County Detention Center

("JEFFERSON COUNTY JAIL"). Prisoners at JEFFERSON COUNTY JAIL may not

receive books, magazines, newspapers or other expressive materials sent

through the mail, regardless of whether the materials are routed directly

from publishers or sent by friends, family members or community

organizations. In the past two years, Defendants have denied numerous

prisoner requests for expressive material, including educational materials

required by a correspondence education course, other books, magazines and

legal newsletters. Defendants compound these restrictions by failing to

provide a library or any other avenue through which prisoners can access

expressive material. These practices violate prisoners' rights secured by the

Speech Clause of the First Amendment to the Constitution.


43)     Defendants also prohibit a wide range of religious materials to

JEFFERSON COUNTY JAIL  prisoners of various faiths. Prisoners may not

possess any religious publications other than the single foundational text for

their religions, and Defendants make no accommodation for prisoners whose

religious exercise requires access to multiple religious materials. As one

example, Defendants denied access to pamphlets, newsletters and other

Christian publications sought by an inmate incarcerated at JEFFERSON

COUNTY JAIL for much of the past two years. Further, non-Christian inmates often cannot access even the single foundational text JEFFERSON COUNTY JAI 's policy purports to allow.

44)     Indeed, the only book, magazine, newspaper or religious publication that Defendants consistently permit prisoners to possess is the Bible. Defendants distribute copies of the King James Bible to prisoners at no cost.

45)     These practices discriminate against non-Christian prisoners in violation of the First Amendment's Establishment Clauses. Moreover, they substantially burden the religious exercise of all prisoners - Christians, Jews, Muslims or those of other faiths - who require materials other than the Bible to practice their religion.  Because Defendants cannot show that imposing a substantial burden on these and other prisoners is the least restrictive means of furthering a compelling government interest, Defendants' policies and practices contravene RLUIPA.

46)  The conduct of the defendants constitutes a pattern or practice of denial of a federal right - specifically the Speech and Establishment Clauses of the First Amendment to the Constitution -  In addition, the defendants violate the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §2000cc ("RLUIPA") by unlawfully impeding the religious exercise of

JEFFERSON COUNTY JAIL  prisoners whose religious exercise requires access to materials other than the Bible.

## JURISDICTION, STANDING, AND VENUE

47)    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345.

48)    The Plaintiffs are authorized to initiate this action pursuant to 42 U.S.C. §2000cc-2(f).

48)    Declratory and injunctive relief is sought as authorized by 42 U.S.C. § 2000cc-2(f).

49)    Venue is proper in the District of Northern District of Alabama pursuant to 28 U.S.C. § 1391. Defendants reside in Alabama, and a substantial part of the events or omissions giving rise to this claim occurred in Alabama.

50) In addition to the specific denials of educational materials and legal magazines cited above, at several JEFFERSON COUNTY JAIL  prisoners have filed grievances within the past year asserting that the facility prohibits

prisoners from possessing any reading material except for a single religious text.

51)   Further, Defendants have taken no steps to mitigate the effect of JEFFERSON COUNTY JAIL 's restrictions on prisoner' access to reading or educational materials. The Facility does not operate a library or offer any other option for prisoners who wish to obtain books, magazines, newspapers, or other educational materials.

52)   In short, Defendants effectively prohibit JEFFERSON COUNTY JAIL  prisoners from reading anything except, under certain circumstances, a religious book or a personal letter.

## JEFFERSON COUNTY JAIL 's Restrictions on Prisoners' Possession of Religious Materials

52)   Defendants' restrictions on possessing religious material substantially burden the religious exercise of all prisoners who require more than a single text to practice their religions. Defendants have admitted  that a prisoner is allowed to possess only his or her "primary religious book," not pamphlets, newsletters or multiple religious texts. Further, the "primary religious book" must be hand-delivered' prisoners cannot order religious materials through the mail.

53)   Adherents of numerous religions rely upon documents contained in multiple books pamphlets or other publications to aid in the exercise of

their faith. Defendants' practice of denying all materials beyond a single religious text makes no exception for these individuals.

54)   JEFFERSON COUNTY JAIL officials have previously admitted that prisoners housed in their facility may only possess a Bible  34.   Through these policies and practices, Defendants have imposed, and continue to impose, substantial burdens on the religious exercise of JEFFERSON COUNTY JAIL  prisoners. Defendants' practices deprive prisoners of texts and other written materials central to their religious exercise. Specifically, Defendants impose a substantial burden on the religious practice of current JEFFERSON COUNTY JAIL inmates.

55)   Defendants have no compelling government interest in burdening the religious exercise of  prisoners who wish to possess religious texts other than the Bible.

56)   Similarly, Defendants' policy and practice of denying such materials is not the least restrictive means of furthering a compelling government interest. Indeed, Defendants' restrictions prohibit many items permitted by other penal institutions with similar compelling interests, such as the Federal Bureau of Prisons and Alabama Department of Corrections.

57)   The substantial burdens imposed on the religious exercise of Mr.
Howard and other JEFFERSON COUNTY JAIL  prisoners affects, or removal of
those substantial burdens would affect commerce with foreign nations,
among the several States, or with Indian tribes. Indeed, the substantial
burden on these prisoners' religious exercise stems directly from Defendants'
prohibition on materials shipped through the mail, often from out of state
vendors - core instrumentality of interstate commerce.

58)   Not only do Defendants burden prisoners of various faiths by
forbidding possession of most religious materials, Defendants engage in a
pattern or practice of conduct that unlawfully favors Christian prisoners over
non-Christian ones.

59)   Specifically, Defendants' policies and practices make King James
Bibles freely available to all prisoners while erecting significant barriers to
accessing other religious texts.

60)   Defendants maintain copies of the King James Bible at the jail
and provide a copy of the Bible at no cost to any prisoner who requests it.

60)   Defendants make no comparable accommodations from
prisoners who seek religious texts other than the Bible, such as the Torah or
Koran. JEFFERSON COUNTY JAIL does not provide prisoners of non-Christian
faiths copies of their religious texts on site, nor do Defendants make non-

Christian religious materials available for purchase in JEFFERSON COUNTY
JAIL 's commissary.

61)   Defendants compound the effects of this discriminatory practice
by prohibiting prisoners from ordering religious materials directly from the
publishers of the desired items. Moreover, JEFFERSON COUNTY JAIL's
general restrictions on prisoners' receipt of mail preclude friends or family
members from sending religious materials through the mail.

62)   Thus, while JEFFERSON COUNTY JAIL  provides Christian
prisoners multiple avenues for obtaining copies of the Bible, Defendants do
not stock non-Christian religious materials at the detention center and
prohibit non-Christian prisoners from receiving such materials from other
sources.

63)   Defendants deny detainees and prisoners in their custody access
to virtually all outside reading material except letters and the Christian Bible.

64)   Defendants' denial of access to outside reading material
constitutes a pattern or practice of conduct that deprives prisoners in their

custody of rights secured by the Speech Clause of the First Amendment, the RLUIPA and the Constitution of the United States.

WHEREFORE, Defendants action denies the Plaintiffs and other similarly situated their constitutional rights under RULIPA and the various amendments of the United States constitution.

## **PRAYER FOR RELIEF**

58.     The Plaintiff is  authorized, pursuant to Section  RLUIPA, to seek injunctive and declaratory relief for Defendants' privileging of Christian religious texts, denial of access to outside reading material, and denial of access to non-Christian religious texts.

WHEREFORE, the Plaintiff  prays that the Court:

a.     Declare that the Defendants have violated the Establishment Clause of the First Amendment by denying

detainees and prisoners in their custody  access to non-Christian religious texts while permitting Christian religious texts, thereby privileging a single religion over others;

22

b.   Declare that the Defendants have violated the Speech Clause of the First Amendment by denying detainees and prisoners in their custody access to outside reading materials;

c.   Declare that the Defendants have violated RLUIPA by denying detainees and prisoners in their custody access to virtually all non-Christian religious texts;

d.   Direct Defendants, their officers, agents, employees, subordinates, successors in office, and all those acting in concert or participation with them to permit detainees and prisoners in their custody to have access to outside reading material, including religious texts and to provide access to religious texts that does not privilege a single religions; and

e.   order such other relief as the interests of justice may require.

**PLAINTIFFS SPECFICALLY RESERVE THE RIGHT TO ADD PLAINTIFFS TO THIS ACTION AND TO AMEND SAME**

Respectfully submitted,


_____
Dan King, III
Attorney for Plaintiff

Stewart & Stewart
1823 3rd Ave N Suite 305
Bessemer, AL 35020
(205) 425-1166
FAX 425-5959

_____
Timothy L. Arnold
Attorney for Plaintiff

Law Office of Timothy L. Arnold
1830 3rd Ave N
Bessemer, AL 35020
(205) 428-4888
FAX 428-4880

**SERVE DEFENDANT HALE AT:**

**Hon. Mike Hale**
**Sheriff**
**2200 Abraham Woods Jr Boulevard**
**Birmingham, AL 35203**


**Jefferson County Commission**
**David Carrington**
**Jimmie Stephens**
**Sandra Little Brown**
**George Bowman**
**Joe Knight**
**716 Richard Arrington Boulevard North**
**Birmingham, AL 35203**